## HAMBURGER *v.* UNITED STATES (No. 625).[1]

CELLULOID IMITATION FLOWERS—ROSE PINS.

The certainty required in a commercial designation is not here shown, and it appearing that the small imitation flowers of the importation are made of celluloid and attached to metal pins, designed to be worn as boutonnières, and that they are so worn by adults, they can not be taken to be "toys"; they were dutiable as artificial flowers under paragraph 425, tariff act of 1897.

United States Court of Customs Appeals, October 12, 1911.

APPEAL from United States Circuit Court for Southern District of New York, Abstract 18920 (T. D. 28998).

[Affirmed.]

*Brown & Gerry* for appellant.

*D. Frank Lloyd*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the classification of certain flower pins imported at the port of New York. These articles are small imitation flowers made of celluloid, attached to metal pins, and are designed and intended to be worn as boutonnières. The collector of customs classified the merchandise as "artificial flowers" and assessed them for duty at 50

---

per cent ad valorem under the provisions of paragraph 425 of the tariff act of July 24, 1897, which paragraph reads, in part, as follows:

425. * * * artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this act, fifty per centum ad valorem.

The importers protested that the goods were "toys," and claimed that as such they were dutiable at 35 per cent ad valorem under the provisions of paragraph 418, which reads as follows:

418. Dolls, doll heads, toy marbles of whatever materials composed, and all other toys not composed of rubber, china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this act, thirty-five per centum ad valorem.

The Board of General Appraisers overruled the protest, and the importers appealed to the United States Circuit Court for the Southern District of New York, which affirmed the decision of the board. From the judgment of the Circuit Court the importers again appealed to the United States Circuit Court of Appeals, and that appeal having been transferred by the act of August 5, 1909, to this court, is now submitted to it for determination.

On the hearing before the board the importers contended and sought to prove that the goods in question were toys in fact and that at and prior to the passage of the tariff act of July 24, 1897, they were generally, definitely, and uniformly known to the trade of the country as "toys." We think that neither contention was established by satisfactory evidence. Testimony to the effect that the flower pins were worn by children on festive occasions; that they were used as gifts in prize packages purchased by children; and that they were bought and sold by toy dealers and dealers in notions fell short of showing that the articles were toys—that is to say, playthings, things intended and designed for the amusement of children only, and which by their very nature and character were reasonably fitted for no other purpose. An examination of the samples in evidence discloses that the flower pins in question are neither more nor less than boutonnières of artificial flowers, and it affirmatively appearing from the record that they can be and are worn by adults as boutonnières it can hardly be said that they are designed and intended for the amusement of children only and are reasonably fitted for no other purpose. In the case of United States *v.* Cattus (167 Fed. Rep., 532) it was decided that artificial shamrocks worn by men, women, and children of the Irish race on St. Patrick's Day were not toys, and as artificial boutonnières or "flower pins" do not materially differ from artificial shamrocks we think the reasoning which excluded the latter must exclude the former from the category of toys.

The testimony as to commercial designation was weak and unsatisfactory, and the conclusion of the importers' witnesses that "flower pins" were recognized by the trade generally and uniformly as toys

seems to have been based largely upon the fact that they were used by children for amusement; that they served the purpose of gifts in prize packages sold to children; and that they were handled by dealers in toys and notions. None of the witnesses would say that the imported articles were bought and sold by the trade as toys, and one of them declined to say that they were "a trade and commerce toy." In view of this state of the evidence and of the fact that in previous controversies concerning the dutiability of imitation flowers made of celluloid and attached to metallic pins merchants did not always claim them to be toys (T. D. 14706; T. D. 14938), we do not feel warranted in holding that the importers have proven a commercial designation of the goods with that positiveness, definiteness, and certainty which the decisions seem to require.

The judgment of the Circuit Court is *affirmed.*